IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM R. PERKINS          :          CIVIL ACTION
                            :
        v.                  :
                            :
FRANK D. GILLIS, et al.     :          No. 04-1697

## REPORT AND RECOMMENDATION

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE                          August        , 2005

This is a counseled petition for writ of habeas corpus filed pursuant to 28 U.S.C. §

2254 by William Perkins ("Petitioner"), an individual incarcerated in the Coal Township

State Correctional Institution.  For the reasons that follow, I recommend that the petition

be denied.

I.      **FACTS AND PROCEDURAL HISTORY**[1]

The following facts were determined by the state court:

> [A]t 6:30 p.m., on the 31st day of March, 1997, [Petitioner]
> entered Moishe's bakery in Philadelphia and told the clerk,
> Elena Harari, "give me the money."  [Petitioner] repeated the
> demand, but the second time he produced a knife to
> emphasize his point.  [Petitioner] removed $80 from the
> register, exited the store and drove off in "a small light gray
> two[-]door car[.]"
>
> The police were notified of the robbery, whereupon the victim
> went to the station and selected [Petitioner] from a photo-

---

[1]This habeas petition is related to three (3) previous habeas petitions, Perkins v. Gillis, No. 01-5469 (E.D. Pa. April 16, 2002) (Van Antwerpen, J.) (dismissed without prejudice); Perkins v. Gillis, No. 02-3484 (E.D. Pa. Jan. 2, 2003) (Van Antwerpen, J.) (dismissed without prejudice); and Perkins v. Gillis, No. 04-1697 (E.D. Pa. Dec. 7, 2004) (Pratter, J.) (amended by Petitioner to form the present petition).  Much of the procedural history herein is borrowed from these earlier cases.

array.[2]  [Petitioner] was arrested on the evening of the robbery as he arrived home in his "silver-with-wide-red-stripe" automobile[.]  [T]his vehicle was described by the victim's co-workers as they looked out the store window and saw [Petitioner] leaving the scene.

The victim positively identified [Petitioner] as the culprit at the preliminary hearing and at trial.  [Petitioner] proffered an alibi defense, i.e., he was with his wife at the time of the robbery.  [Petitioner]'s wife corroborated his defense, but the trial court rejected [Petitioner]'s account, credited the Commonwealth's witnesses and convicted [Petitioner] of the above-referenced crime.

Commonwealth v. Perkins, No. 2354 EDA 1999 at 3-4 (Pa. Super. March 28, 2003) (unpublished memorandum) (footnote in original).  Petitioner was convicted on March 4, 1998, following a bench trial before the Honorable Richard B. Klein, Court of Common Pleas of Philadelphia County.  On July 9, 1999, Judge Klein sentenced Petitioner to seven (7) to fourteen (14) years of imprisonment.

On July 29, 1999, Petitioner filed a Notice of Appeal with the Pennsylvania Superior Court, which appointed Jeremy C. Gelb, Esquire, to represent Petitioner. Thereafter, a series of events transpired which caused considerable delay in the disposition of Petitioner's appeal, the most significant of which involved the loss of notes of testimony encompassing Petitioner's suppression hearing, the beginning of his trial

_____

[2]In advance of the photo-array, the police received information from [Petitioner]'s daughter that he "was committing robberies" throughout the city.  Once police were informed of the robbery at the bakery, they compiled a photo-array which included a photograph of Petitioner. The victim selected the photograph of Petitioner as the person who had robbed Moishe's bakery.

testimony, and his post-verdict hearing.[3]

On July 1, 2002, Petitioner presented the following claims to the Superior Court:

1) ineffective assistance of counsel and denial of due process of law where a defense investigator conducted a prejudicial photographic identification procedure with the victim prior to the preliminary hearing;

2) ineffective assistance of counsel for trial counsel's failure to introduce into evidence the police photograph of Petitioner taken just hours after the robbery;

3) ineffective assistance of counsel and denial of due process where trial counsel failed to subpoena and call Eileen Perkins and Frank Iaconelli as alibi witnesses;

4) ineffective assistance of counsel when trial counsel opened the door to prejudicial testimony from Petitioner's parole officer concerning Petitioner's prior convictions, his history of drug abuse, and other inflammatory information which supplied a motive for commission of the robbery;

5) trial court error in ruling that Petitioner's parole officer would be permitted to testify as to the hearsay statements allegedly made to him by Petitioner's daughter, Nancy Whaley; and

---

[3]The following is a brief chronology of the events which occurred after Petitioner filed his Notice of Appeal.  On September 14, 2000, Petitioner requested an extension of time to file his appellate brief.  On September 19, 2000, Petitioner's request for an extension was granted.  On October 12, 2000, Petitioner entered an application to Stay the Briefing Schedule, and an Application for Remand.  On November 1, 2000, the Pennsylvania Superior Court entered a per curiam order instructing Petitioner to file a Statement of Absence of Transcript in accordance with Pa.R.A.P. 1923, by preparing a statement of the proceedings from his suppression hearing that had occurred on February 26, 1998.  On November 13, 2000, Petitioner filed an Application for Clarification of the Per Curiam Order filed November 1, 2000.  On December 13, 2000, a second per curiam order was issued by the Superior Court, directing Petitioner to supply statements of proceedings from February 26, 1998, July 29, 1998, and for relevant portions of unavailable trial testimony.  On August 13, 2001, Petitioner filed his Statement of Absence of Transcript.  On September 27, 2001, the Commonwealth filed its response to Petitioner's Statement.  On October 23, 2001, Judge Klein filed his review and approval of Petitioner's Statement.  A briefing schedule was set.  Petitioner thereafter filed a series of requests for extensions of time in which to file a brief.  On July 1, 2002, Petitioner filed his brief with the Superior Court.  On November 1, 2002, the Commonwealth filed its brief in response thereto with the Superior Court.

6) entitlement to a new trial where portions of the notes of testimony
of the pretrial, trial and post-trial proceedings are missing and unavailable,
and therefore meaningful appellate review is precluded.

On March 28, 2003, the Superior Court affirmed the judgment of sentence on the merits.

Commonwealth v. Perkins, No. 2354 EDA 1999 (Pa. Super. March 28, 2003)

(unpublished memorandum).

On April 28, 2003, Petitioner filed a Petition for Allowance of Appeal in the

Pennsylvania Supreme Court raising the same claims he had presented to the Superior

Court.  The Supreme Court denied allocatur on September 23, 2003.  Commonwealth v.

Perkins, 833 A.2d 142 (Pa. 2003).

On April 15, 2004, Petitioner filed a petition for writ of habeas corpus claiming:

1) ineffectiveness of trial counsel for failing to introduce a police photo
into evidence;

2) ineffectiveness of trial counsel for failing to subpoena or interview alibi
witnesses;

3) ineffectiveness of trial counsel for allowing an investigator to conduct a
prejudicial photographic procedure with the victim, prior to a court hearing;

4) ineffectiveness of trial counsel for opening the door to Petitioner's past through
a witness examination;

5) trial court error for allowing a Commonwealth witness to testify to
inflammatory hearsay evidence without any basis in truth or any foundation under
the hearsay rules;

6) violation of due process insofar as the Commonwealth failed to provide all the
notes of testimony from his hearings and trial;

4

7) ineffectiveness of appellate counsel was for failing to argue that the trial court erred in denying a hearing on claims that trial counsel was ineffective and that the trial judge acted as a witness; and

8) ineffectiveness of appellate counsel for failing to raise a weight of the evidence claim and/or for failing to address Petitioner's innocence when there was not proof beyond a reasonable doubt, thereby violating Petitioner's due process rights.

In a Report and Recommendation dated September 15, 2004, this Court recommended that the petition be dismissed without prejudice because claims seven (7) and eight (8) were unexhausted. See Perkins v. Gillis, No. 04-1697, 2004 WL 2066731 (E.D. Pa. Sept. 15, 2004). Petitioner requested permission to strike claims seven (7) and eight (8) from his petition and have the other claims addressed on their merits. See Docket at No. 12. The District Court granted Petitioner's request, and the amended petition now comes before the Court.

## II.    APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000). The AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. Id. at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable

5

application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." 529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000).  The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.  "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that

6

an unreasonable application of federal law is different from an incorrect application of

such law and a federal habeas court may not grant relief unless that court determines that

a state court's incorrect or erroneous application of clearly established federal law was

also unreasonable."  Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

## III.    DISCUSSION

### A.    Ineffectiveness of Counsel

Petitioner raises four (4) claims of ineffectiveness of trial counsel.  These claims

are governed by Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the

United States Supreme Court set forth the standard for a petitioner seeking habeas relief

on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687; see also Williams, 529 U.S. at 363 ("To establish ineffective assistance of

counsel, the defendant must prove: (1) that counsel's performance fell below an objective

standard of reasonableness; and (2) that . . . there is a reasonable probability that but for

counsel's unprofessional errors, the result of the proceeding would have been different.")

(internal citations omitted).

Because "it is all too easy for a court, examining counsel's defense after it has

7

proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391.  Thus, Petitioner is entitled to relief if the Pennsylvania courts' decision rejecting his claims of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law.[4] Id.

### 1.    Failure to Introduce Police Photo into Evidence

Petitioner first argues that trial counsel was ineffective for failing to introduce into

---

[4]Upon analyzing the law set forth in the state court opinions, I find that the state court did not apply a rule that contradicts the Supreme Court's holding in Strickland. See Werts, 228 F.3d at 204.  The Pennsylvania Supreme Court has held that the Pennsylvania standard judging ineffectiveness claims is identical to the ineffectiveness standard enunciated by the United States Supreme Court in Strickland. Werts, 228 F.3d at 203 (citing Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987)).

evidence a photograph of Petitioner taken several hours after the robbery.  Petitioner argues that the photograph would have highlighted differences between his own physical appearance and the physical description of the robber given by the victim, Harari, insofar as Harari described the robber as having salt and pepper hair, while Petitioner has brown hair.  Petitioner also had a "Fu-man-chu" moustache, while Harari described the man as having only a moustache.  Lastly, Petitioner contends that the photograph would have revealed that he had visible scars on his face and neck, which were not identified in Harari's description of the robber.

I find that Petitioner is not entitled to relief on this claim because Petitioner cannot show that trial counsel's action prejudiced him at trial.  See Strickland, 466 U.S. at 697 (holding that if a habeas petitioner was not prejudiced by the attorney's alleged error, whether the attorney's action was objectively reasonable is immaterial).  The trial judge acknowledged the inconsistencies between Harari's description of the robber and Petitioner's appearance.  In doing so, however, the trial judge noted that "often the description given by a victim right after a robbery is inaccurate although the victim knows the robber when he or she sees him again."  See Trial Court Opinion, attached to Ptr's Br. as Exhibit "H," at 3.  The trial judge found that, despite the inconsistencies alleged by Petitioner, Harari's identification in the photo-array was accurate and credible.  See id.

State court findings of fact and credibility are presumed to be correct in habeas proceedings.  Miller v. Fenton, 474 U.S. 104, 114 (1985).  Here, the judge as factfinder

9

credited Harari's photo-array identification above any inconsistencies between her verbal

description and Petitioner's physical appearance.  Because there is no indication that the

introduction of Petitioner's photograph into evidence would have altered the outcome of

the trial, Petitioner cannot show that counsel's action prejudiced him.  As a result, I find

that he is not entitled to relief on his first ineffectiveness claim.

### 2.    Failure to Subpoena and Call Alibi Witnesses

Petitioner also alleges that trial counsel was ineffective for failing to call two (2)

potential alibi witnesses, Eileen Perkins and Frank Iaconelli ("Iaconelli").  The Superior

Court dismissed this claim as meritless, adopting the trial court's evaluation of the claim:

> [Petitioner claims] [i]neffective assistance of counsel for
> failing to call Eileen Perkins and Frank Iocanelli [sic] as
> defense witnesses to confirm the alibi testimony of Susan
> Wolfe Perkins.  Susan Wolfe Perkins said her husband went
> out to make a withdrawal from Mr. Iaconelli's account at an
> ATM machine for money for Eileen Perkins.  She placed the
> time he left as shortly after the robbery.  While she seemed to
> be a credible witness, obviously she did not want her husband
> to go to jail.  [Trial counsel] could not testify as to strategic
> reasons for not calling additional alibi witnesses, but other
> family members and close friends probably would not add
> much and could cause problems with inconsistency in
> testimony.  Moreover, it is dangerous to call someone who is
> on drugs, as was Eileen Perkins and there was no indication
> [trial counsel] could locate Iaconelli.

Trial Court Opinion, attached to Ptr's Br. as Exhibit "H," at 3-4 (quoted in Perkins, No.

2354 EDA 1999, attached to Ptr's Br. as Exhibit "B," at 6-7).

I agree with the state courts' findings.  First, ample cause existed for trial counsel

not to call Eileen Perkins or Iaconelli.  Perkins, by her own admission, was a heroin

addict at the time of the robbery.  Given that the trial judge did not credit the testimony of

Susan Perkins because she is Petitioner's wife, it is unlikely that the trial judge would

have given weight to the testimony of Eileen Perkins or Iaconelli, particularly given

Eileen Perkins's drug addiction.  The choice not to put incredible witnesses on the stand

should not be held against counsel.  See Grant v. Stickman, 122 Fed. App. 590, 593 (3d

Cir. 2005) (agreeing with Pennsylvania trial judge's ruling that counsel was not

ineffective for deciding not to call alibi witnesses); cf. Pena-Martinez v. Duncan, 112

Fed.Appx. 113, 114 (2d Cir. 2004) (holding that, generally, the decision whether to call

particular witnesses is a discretionary aspect of trial strategy but that "an unexplained

failure to call *credible* alibi witnesses cannot be considered reasonable trial strategy")

(emphasis added).[5]

   In any event, even if Eileen Perkins and Iaconelli had testified to every fact in their

affidavits, it is not reasonably likely that the outcome of the trial would have been

different.  Both affidavits claim that Eileen Perkins called Petitioner at roughly 6:15 p.m.

on March 31, 1997, and that Petitioner returned the call about ten (10) minutes later.  See

Affidavit of Eileen Perkins, attached to Ptr's Br. as Exhibit "F," at ¶3; Affidavit of Frank

Iaconelli, attached to Ptr's Br. as Exhibit "G," at ¶3.  The affidavits state that Petitioner

arrived at their residence around 7:00 p.m.  See Affidavit of Eileen Perkins, attached to

---

   [5]In citing these non-precedential cases, I acknowledge that they are not binding, but rather
provide a useful analysis for this legal issue.

Ptr's Br. as Exhibit "F," at ¶5; Affidavit of Frank Iaconelli, attached to Ptr's Br. as Exhibit "G," at ¶4.  Given this proposed testimony, neither of these purported alibi witnesses could actually provide an alibi for Petitioner at the time of the crime, around 6:30 p.m.[6]  Obviously, trial counsel cannot be found ineffective for failing to call alibi witnesses who would not, in fact, provide an alibi.

For all of the aforementioned reasons, I conclude that Petitioner is not entitled to relief on this claim.

### 3.    Investigator's Use of Photograph and Interview with Victim

Petitioner also alleges that trial counsel was ineffective as a result of actions by Gay Landis ("Landis"), a defense investigator, that allegedly "sabotaged" Petitioner's defense.  Specifically, Petitioner argues that Landis improperly showed Harari a photograph of Petitioner before Petitioner's preliminary hearing; improperly stated that Petitioner had a "bad history" and "did a lot of bad things;" and improperly expressed sorrow for what Petitioner had done.  See Ptr's Br. at 38.  As a result, Petitioner claims that Landis tainted Harari's identification of Petitioner at the preliminary hearing and at trial – and that trial counsel is responsible for the conduct of the defense investigator

---

[6]Petitioner lived at 9629 Bustleton Avenue, only approximately one and a half (1½) miles from Moishe's bakery.  See Ptr's Br. at 34; Resp. at 2, ¶2 (listing the address of Moishe's bakery).  The Court notes that Petitioner claims he remained on the phone with Eileen Perkins until 6:40 p.m.  See Ptr's Br. at 33-34.  However, Eileen Perkins's affidavit does not reflect the length of their phone call, and indicates that the conversation consisted of her telling Petitioner she was sick and needed drugs and Petitioner responding that he would pick her up.  See Affidavit of Eileen Perkins, attached to Ptr's Br. as Exhibit "F," at  ¶4.

under principles of agency.  See Ptr's Br. at 38.

The state courts considered, and rejected, this claim, concluding that "there is no . . . constitutional protection against 'ineffectiveness of investigator.'"  Trial Court Opinion, attached to Ptr's Br. at Exhibit "H," at 3; Perkins, No. 2354 EDA 1999, at 6.  I agree; there is no recognized habeas relief for "ineffectiveness of investigator."  As such, this claim is non-cognizable.

In any event, even if Landis were deemed to be an agent of Petitioner's trial counsel, Petitioner's argument fails under Strickland because Landis's actions did not prejudice Petitioner.[7]  Landis spoke with Harari prior to Petitioner's preliminary hearing, but well after Harari had identified Petitioner in the photo-array the night of the robbery. Because Harari had already identified Petitioner, the subsequent reiteration of that identification was not prejudicial.  Petitioner contends that Landis's interview confirmed Harari's previous identification and "sabotaged" the defense "before it started."  Ptr's Br. at 39.  However, there is no indication in the record that Harari was unsure of her identification before the interview with Landis occurred.  For all of the aforementioned reasons, Petitioner is not entitled to relief on this claim.

### 4.    Trial Examination of Petitioner's Parole Officer

Petitioner next alleges that trial counsel was ineffective for eliciting prejudicial

---

[7]Although Petitioner contended in the state courts that Harari's trial identification of Petitioner should have been suppressed, I do not reach that question because Petitioner alleges only ineffective assistance of counsel in relation to the investigator's interview with Harari.

13

testimony from Petitioner's parole officer, David Matrisciano ("Matrisciano").  The trial

court stated the following regarding this claim:

> [T]he parole agent was called by the Commonwealth . . . to
> establish that Perkins often did not wear his glasses when the
> agent saw him.  [Petitioner's] position was that he always
> wore his glasses, and that the robber was not wearing glasses.
> Once the parole agent testified, [trial counsel] used the
> opportunity to show [Petitioner] had been doing well on
> parole, so much so that [Petitioner] was permitted to travel to
> Montana with his sick wife.  Moreover, [Mastrisciano]
> testified that [Petitioner's] urines had been clean.
>
> [Trial counsel] had tried to show that the drug-using daughter,
> Eileen Perkins, made the call to the police because she was
> mad at her father and what she said was not true.  However,
> this opened the door for the parole agent to say the non-drug-
> using daughter, Nancy Whaley, was the one who told him
> about [Petitioner's] return to drug use along with her sister,
> Eileen Perkins.  It was important for [trial counsel] to
> discredit the facts of the statement that [Petitioner] was
> robbing people and doing drugs.  It does not seem [trial
> counsel] [knew] that the parole agent would testify that the
> other sister [was] the one to call . . . . While [counsel] was
> taking a big chance, that does not mean it was a bad decision
> to take that chance.  Ineffectiveness is not taking a long shot
> in a very difficult case and having it not pan out.

Trial Court Opinion, attached to Ptr.'s Br. As Exhibit "H," at 5-6.

I agree with the state courts and conclude that trial counsel's actions were

reasonable.  Under Strickland, a Petitioner "must overcome the presumption that, under

the circumstances, the challenged action might be considered sound trial strategy."  466

U.S. at 689.  Because Judge Klein, sitting as factfinder, already knew that Petitioner had a

prior criminal history,[8] Gellman tried to elicit the most favorable testimony possible from Petitioner's parole officer, specifically that Petitioner had been compliant with the terms of his parole.  As a result, this Court cannot say that, under the circumstances, trial counsel's actions fell below an objective standard of reasonableness.  Therefore, I conclude that Petitioner is not entitled to relief on this claim.

**B.    Trial Court Error in Allowing Hearsay Testimony**

Petitioner next alleges that his due process rights were violated when the trial court allowed Matrisciano to testify about his conversation with Petitioner's daughter, Nancy Whaley.  Although Petitioner presents this claim as arising under the Confrontation Clause, he characterized the claim before the state courts as one of evidentiary error.  See Petition for Allowance of Appeal, attached to Resp't's Br. at Exhibit "A," at  25.  Because Petitioner did not fairly present this claim to the state courts, the claim is unexhausted.  See McCandless v. Vaughn, 172 F.3d 255, 261-262 (3d. Cir. 1999).

The Supreme Court ruled on this issue in Duncan v. Henry, 513 U.S. 364 (1995), in circumstances similar to the one at bar.  There, as here, the petitioner alleged in his habeas petition that the trial court violated his due process rights by allowing hearsay testimony.  However, as here, the petitioner in Duncan did not present the claim to the state courts as a violation of any constitutional right.  The Supreme Court held that the

---

[8]Judge Klein knew Petitioner "had at least a relatively serious background," in part because the judge had to sign a writ "to get him brought to Philadelphia for trial."  Trial Court Opinion at 5, attached to Ptr's Br. at Exhibit H-5.  Judge Klein "noted on the record [that] one does not often get to state prison for minor offenses."  Id.

petitioner had not fairly presented his claim to the state courts.  Specifically, the Court

held, "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial

denied him the due process of law guaranteed by the Fourteenth Amendment, he must say

so, not only in federal court, but in state court."  Duncan, 513 U.S. at 365-366.  Consistent

with the Supreme Court's holding, I find that Petitioner here did not fairly present this

due process claim to the Pennsylvania state courts.

I find, however, that exhaustion should be excused pursuant to 28 U.S.C. §

2254(b)(1), because a return to state court would be futile due to "an absence of available

State corrective process."  Lines v. Larkins, 208 F.3d 153, 162 (3d Cir. 2000).  The only

way in which Perkins could present this claim in the state court at this time is by filing an

application for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act

("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541.  See id. at 164 n.17.  However, any such

petition would be time-barred by the PCRA's statute of limitations.  Pursuant to the

amended PCRA, effective January 16, 1996, collateral actions must be filed within one

(1) year of the date the conviction at issue becomes final.  42 Pa. Cons. Stat. Ann. §

9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania

Supreme Court has held that the time restrictions for seeking relief under the PCRA are

jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes

of the PCRA, a judgment becomes final at the conclusion of direct review, including

discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the

United States, or at the expiration of time for seeking the review.  42 Pa. Cons. Stat. Ann. § 9545(b)(3).  As previously noted, the Pennsylvania Supreme Court denied Petitioner's petition for allocatur on September 23, 2003, and Petitioner failed to petition for a writ of certiorari in the United States Supreme Court; therefore, his conviction became final on December 22, 2003, when the time for seeking an appeal in the United States Supreme Court expired.  Because Petitioner's conviction became final over one (1) year ago, the PCRA statute of limitations would preclude Petitioner from presenting the instant claim in a PCRA petition.[9]  42 Pa. Cons. Stat. Ann. § 9545(b)(1).  As a result, exhaustion would be futile and is excused.

Although exhaustion may be excused, I may nonetheless be precluded from reviewing the merits of claims deemed exhausted.  The Third Circuit has held that "claims deemed exhausted because of a state procedural bar are procedurally defaulted, and federal courts may not consider their merits unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default."  Werts, 228 F.3d at 192 (citations omitted); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991).  The "cause and prejudice" standard applies whether the default in question occurred at trial, on appeal, or on state collateral attack.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

_____

[9]Although there are three (3) exceptions to the PCRA's statute of limitations, 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(i)-(iii), Petitioner fails to allege any of the limited circumstances upon which an exception would be granted.

The Supreme Court has delineated what constitutes "cause" for the procedural default. The petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors . . . at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193 (citing Carrier, 477 U.S. at 494). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 748. In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496). To satisfy the "actual innocence" stand, a petitioner must show that it is more likely than not that no reasonable juror, or, in the present case, judge sitting as factfinder, would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327. Here, Petitioner has not made the necessary showing to excuse his default, and I find that failure to

18

consider the claim would not result in a fundamental miscarriage of justice.  As a result, I

further find that Petitioner's claim of trial court error is procedurally defaulted.

    **C.**    **Inadequacy of Trial Record**

    Petitioner next claims is that he has been deprived of his Fourteenth Amendment

rights because records from Petitioner's trial and hearings were lost.  Meaningful review

of a conviction does require that a transcript or other equivalent picture of the trial

proceedings be in the record; however, in the absence of a transcript, meaningful review

is still possible where the parties provide an equivalent picture of the proceedings.

Draper v. Washington, 372 U.S. 487, 495 (1963); Commonwealth v. Paxton, 821 A.2d

594, 596 (Pa. Super. 2003).  Under Draper, meaningful review is possible as long as the

reports of the trial proceeding "place before the appellate court an equivalent report of the

events at trial from which the appellant's contentions arise."  372 U.S. at 495.

Pennsylvania law provides for such an equivalent picture of the proceedings by way of a

"Statement in Absence of Transcript" under Pa. R.A.P. 1923.  Here, Petitioner provided a

Statement in Absence of Transcript and Judge Klein provided his bench notes from the

trial.  See Ptr's Exhibits "D" and "I."   The Superior Court found that the recreated record

was sufficient to allow meaningful review of the issues presented by Petitioner.  In light

of the Supreme Court's holding in Draper, I find that the Superior Court did not engage in

an unreasonable application of the law.  Therefore, Petitioner is not entitled to relief on

this claim.

Accordingly, I make the following:

<h1 style="text-align:center">R E C O M M E N D A T I O N</h1>

AND NOW, this            day of August, 2005, it is RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DENIED.  There has

been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance

of a certificate of appealability.

BY THE COURT:


s/Peter B. Scuderi
PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM R. PERKINS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK D. GILLIS, et, al. | : | No. 04-1697 |

**O R D E R**

AND NOW, this      day of                                    , upon careful and

independent consideration of the petition for writ of habeas corpus filed pursuant to 28

U.S.C. § 2254, and after review of the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and any objections thereto, IT IS ORDERED that:

1.      The Report and Recommendation is APPROVED and ADOPTED.

2.      The Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254

is DENIED.

3.      There is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

_____

GENE E. K. PRATTER, J.